**\* NOT FOR PUBLICATION \***

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

```
_____
                                    :
UNITED STATES OF AMERICA            :
                                    :
                                    :
         v.                         :        No. 13-cr-0560 (FLW)
                                    :            OPINION
LUKE ATWELL and                     :
CHRISTOPHER CASETLLUZZO             :
                                    :
              Defendants.           :
_____:
```

**WOLFSON, United States District Judge**:

      Luke Atwell and Christopher Castelluzzo (collectively, "Defendants") have been charged in a Superseding Indictment with a single count of conspiracy to distribute with intent to distribute various controlled substances from in or about November 2010 through in or about April 2013, in violation of 21 U.S.C. § 846. In relevant part, Defendants, in a single, jointly filed brief, move to dismiss the Superseding Indictment, and, in the alternative, request (1) a bill of particulars and (2) to sever the trial of the Defendants.[1] In its opposition, the United States of America ("the Government") moved to introduce evidence that emails were exchanged between the Google accounts registered to Defendants dating back to September 2010, two months prior to the time period noted in the charged conspiracy. While the Court decided all of these motions at oral argument, which took place on Tuesday, April 21, 2015, and placed the Court's rulings on

---

[1] Defendants also move (1) to suppress certain materials, some of which were recovered pursuant to a search warrant and some of which were obtained without a warrant, and, in their reply, (2) for a *Franks* hearing. While the Court heard limited testimony pertaining to Defendants' suppression motion on April 21, 2015, the hearing has been continued until May 11, 2015. Thus, a determination on those motions will be made at or after the conclusion of the hearing and argument on May 11th.

the record, in this written opinion the Court expands upon the issues raised by Defendants and the Government.

For the reasons set forth on the record, and for the reasons set forth in this Opinion, Defendants' motions are DENIED and the Government's motion is GRANTED.

## I.    Background

Investigations initiated by the Drug Enforcement Administration ("DEA"), the Department of Homeland Security and Homeland Security Investigations ("HSI") led to the present charges. First, the DEA conducted an investigation in March 2013, which resulted in the seizure of over 6 kilograms of methylone at a drug re-packaging mill in East Orange, New Jersey. Second, HSI seized approximately 2.9 kilograms of methylone that Atwell picked up on April 15, 2013 at the Manville, New Jersey post office and placed in the car he occupied with Castelluzzo. Finally, following Defendants' arrest on April 16, 2013, outside the Manville Post Office, HSI agents searched various electronic devices of Defendants and uncovered email communications purportedly establishing a drug conspiracy between Defendants and others dating back to 2010.

On April 17, 2013, Defendants were charged by criminal complaint with conspiracy to import contraband—specifically, methylone—into the United States. On June 4, 2013, HSI Special Agent Alexandra deArmas presented seven applications and three affidavits to the Honorable Seven C. Mannion, U.S. Magistrate Judge. The first affidavit was submitted in support of the three applications made for the search and seizure of evidence and information on, pertaining to, or otherwise relating to or associated with the three cellular telephones seized incident to arrest –two of which were recovered from defendant Castelluzzo's person and one of which was recovered from defendant Atwell's person. The second affidavit was submitted in

support of the applications made for the search of the sixteen gigabyte flash drive keychain recovered incident to the arrest of defendant Atwell, as well as the computer tower recovered incident to the consensual search of the LA Courier Services facility, both of which were recovered on April 16, 2013, the date of defendants' arrests, and have since that time remained in the custody of HSI. Finally, the third affidavit was submitted in collective support of the applications made for the search of any and all information associated with the email account of atwell.luke@gmail.com and the email account of nychookah@gmail.com, both of which are stored at premises controlled by Google. Judge Mannion signed all of the warrants and HSI agents began executing the warrants.[2]

The original indictment in this case was returned in August 2013, charging Defendants with conspiracy to import methylone (commonly known as "Ecstasy") into the United States and with the substantive crime of importing methylone into the United States in April 2013.

On September 15, 2014, the grand jury returned a one-count superseding indictment against Atwell and Castelluzzo, charging Defendants with conspiracy to distribute and possess with the intent to distribute the following controlled substances: (1) methylone (a Schedule I controlled substance), contrary to 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); (2) cocaine (a Schedule II controlled substance), contrary to 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); (3) MDMA (a Schedule I controlled substance), contrary to 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); and (4) marijuana (a Schedule I controlled substance, contrary to 21 U.S.C. §§ 841(a)(1) and (b)(1)(D).

## II.    Motion to Dismiss Superseding Indictment

---

[2] Regarding the searches of Defendants' cell phones and the Gmail accounts, the HSI agents worked with Apple and Google, respectively, to execute the searches.

Defendants first argue that the Superseding Indictment should be dismissed for lack of sufficiency. On a motion to dismiss, a court reviews the indictment to determine whether the indictment:

(1) contains the elements of the offenses intended to be charged,

(2) sufficiently apprised the defendant of what he must be prepared to meet, and

(3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution.

*United States v. Vitillo*, 490 F.3d 314, 321 (3d Cir. 2007); *see also* FED. R. CRIM. P. 7(c)(1). An indictment may not merely recite the essential elements of the offense charged, it must allege specific facts that fall within the scope of the relevant criminal statute. *Id.*; *United States v. Kemp*, 500 F.3d 257, 280 (3d Cir. 2007). All facts alleged in the indictment must be taken as true, and the court is to employ a "common sense construction" thereof. *United States v. Hodge*, 211 F.3d 74, 76 (3d Cir. 2000).

In *United States v. Bergrin*, 650 F.3d 257 (3d Cir. 2011), the Third Circuit reiterated the limited scope of the court's inquiry on a motion to dismiss. The Court of Appeals underscored that, "[w]hile detailed allegations might well have been required under common-law pleading rules, . . . they surely are not contemplated by Rule 7(c)(1)." *Id.* at 264 (quoting *United States v. Resendiz—Ponce*, 549 U.S. 102, 110 (2007)). The court further emphasized that although courts "may look for more than a mere 'recit[ation] in general terms [of] the essential elements of the offense, . . . [a] ruling on a motion to dismiss is not . . . a permissible vehicle for addressing the sufficiency of the government's evidence." *Id.* at 264-65 (citations omitted). Indeed, "no greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit the defendant to prepare his defense and to invoke double jeopardy in the event of a subsequent prosecution." *Id.* at 264 (quoting *United States v. Rankin*, 870 F.2d 109, 112 (3d Cir.

4

1989)). According to the *Bergrin* court, this is a "narrow, limited analysis geared only towards ensuring that legally deficient charges do not go to a jury." *Id.* at 268.  In that regard, *Bergrin* makes clear that, although an indictment fails to state an offense if the facts alleged fall beyond the scope of the criminal statute "as a matter of statutory interpretation," *Id.* at 264-65, no deeper inquiry into the veracity or evidentiary value of the indictment's allegations is permitted.

Here, Defendants claim that the only charge contained in the Superseding Indictment— conspiracy—is not sufficiently alleged.  The essential elements of drug conspiracy are: "(1) a unity of purpose between the alleged conspirators; (2) an intent to achieve a common goal; and (3) an agreement to work together toward that goal." *United States v. Brown*, 539 F. App'x 57, 59 (3d Cir. 2013) *cert. denied*, 134 S. Ct. 953 (2014). "In order to establish a violation of 21 U.S.C. § 846, the Government need not prove the commission of any overt acts in furtherance of the conspiracy." *United States v. Shabani*, 513 U.S. 10, 15 (1994); *see also Brown*, 539 F. App'x at 60 n.3.

The Superseding Indictment sets forth the following allegations:

- From in or around November 2010 through in or around April 2013, in the District of New Jersey, and elsewhere, Defendants knowingly and intentionally conspired and agreed with each other and others to possess with the intent to distribute controlled substances (Superseding Indictment ¶ 1);

- The specific controlled substances identified in the Superseding Indictment are:

    - (1) a quantity of a mixture and substance containing a detectable amount of 3,4-Methylenedioxymethcathinone Hydrochochloride ("methylone"), a Schedule I controlled substance, contrary to 21 U.S.C. § 841(a)(1) and (b)(1)(C), (Superseding Indictment ¶ 1a);

5

    ▪  (2) a quantity of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, contrary to 21 U.S.C. § 841(a)(1) and (b)(1)(C), (Superseding Indictment ¶ 1b);

    ▪  (3) a quantity of a mixture and substance containing a detectable amount of 3,4-methylenedioxymethamphetamine ("MDMA"), a Schedule I controlled substance, contrary to 21 U.S.C. § 841(a)(1) and (b)(1)(C), (Superseding Indictment ¶ 1c); and

    ▪  (4) a quantity of a mixture and substance containing a detectable amount of marihuana, a Schedule I controlled substance, contrary to 21 U.S.C. § 841(a)(1) and (b)(1)(C), (Superseding Indictment ¶ 1d).

The Superseding Indictment further states that Defendants are in violation of 21 U.S.C. § 846. (Superseding Indictment ¶ 1).

        Defendants claim that the superseding indictment does not contain a plain, concise, and definite statement of the essential facts constituting the sole offense charged, because "[a]lthough the superseding indictment . . . contains the necessary elements identified in 21 U.S.C. §[] 846 and further articulated in controlling authority, it fails to properly allege how either defendant 'did knowingly and intentionally conspire and agree with each other and with others to distribute and to possess with the intent to distribute controlled substances,'" leaving Defendants "to speculate as to the criminal actions of which they are accused." Defs.' Br. at 22 (quoting Superseding Indictment ¶ 1). Defendants further take issue with the imprecise language in the superseding indictment, to wit, the vague time frame of the charged conspiracy ("[f]rom in or around November 2010 through in or around April 2013") and the unspecified quantity of controlled substances allegedly distributed and possessed with the intent to distribute. Finally,

Defendants argue that "the core of the government's case here is defendants' purported involvement in the smuggling of a precise quantity of methylone, charges that dissipated upon the return of the superseding indictment," and the superseding indictment raises the question of whether the new charge is the basis of some other non-disclosed activity that is not rooted in defendants' alleged smuggling activities. *Id.* at 23.

However, as Defendants concede, the Superseding Indictment does contain the necessary elements as defined in 21 U.S.C. § 846; in addition, the Superseding Indictment identifies the general timeframe (November 2010 to April 2013) and location (the District of New Jersey) of the purported conspiracy, the names of Defendants, and the controlled substances alleged to have been possessed with the intent to distribute (methylone, cocaine, MDMA, and marijuana). (Superseding Indictment at ¶ 1). Such specificity in an indictment is sufficient for the purposes of defeating a motion to dismiss. *See, e.g.*, *United States v. Johnstone*, 856 F.2d 539, 540, 541–542 (3d Cir. 1988) (finding that an "indictment [that] specified both the [approximate] time frame and the geographical area of the conspiracy . . . [and] . . . also specified the purpose of the conspiracy, and described the role of several of Johnstone's co-defendants . . . . was sufficient to inform Johnstone of the conspiracy charged and to enable him to plead double jeopardy in future prosecutions for the same offense"); *see also United States v. Cheatham*, 500 F. Supp. 2d 528, 533 (W.D. Pa. 2007); *United States v. Crabb*, No. 4:CR-07-423, 2008 WL 794871, at *1 (M.D. Pa. Mar. 24, 2008) ("[W]e find that the indictment sufficiently enables defendant to avoid a subsequent prosecution for the same offense. It provides defendant with the time and location of the conspiracy, as well as the names of his coconspirators and the means by which the conspiracy was committed."). The same conclusion adheres in this case.

## II.    Bill of Particulars

In the alternative to Defendants' motion to dismiss, Defendants request a bill of particulars. For an indictment to be sufficient, it must contain all the elements of a crime and adequately apprise the defendant of what he must be prepared to meet. *See Russell v. United States*, 369 U.S. 749, 763-766 (1962); *United States v. Moyer*, 2012 U.S. App. LEXIS 4083, at *14-15 (3d Cir. Feb. 29, 2012). "[W]hen the indictment itself is too vague and indefinite for such purposes," a bill of particulars is warranted. *United States v. Addonizio*, 451 F.2d 49, 64 (3d Cir. 1971) (internal quotation marks and citation omitted). "The purpose of the bill of particulars is to inform the defendant of the nature of the charges brought against him to adequately prepare his defense, to avoid surprise during the trial and to protect him against a second prosecution for an inadequately described offense." *Id.* at 63-64 (quoting *United States v. Tucker*, 262 F. Supp. 305, 308 (S.D.N.Y. 1966)). The decision to grant a motion for a bill of particulars is a "discretionary matter with the trial court," and a denial of such a motion "does not amount to an abuse of discretion unless the deprivation of the information sought leads to the defendant's inability to adequately prepare his case, to avoid surprise at trial, or to avoid the later risk of double jeopardy." *Id.* at 64.

Importantly, a bill of particulars, unlike discovery, is not intended to provide the defendant with the fruits of the government's investigation. Rather, it is intended to give the defendant only that minimum amount of information necessary to permit the defendant to conduct his own investigation." *United States v. Smith*, 776 F.2d 1104, 1111 (3d Cir. 1985) (citations omitted). Further, "access to discovery … weakens the case for a bill of particulars." *United States v. Urban*, 404 F.3d 754, 772 (3d Cir. 2005); *United States v. Gagliardi*, 285 Fed. Appx. 11, 20 (3d Cir. 2008).

Here, Defendants request the following information in a bill of particulars:

(1) "As to the illegal conduct in which each defendant is alleged to have engaged . . .: (a) the nature of the illegal activity, (b) the role that the government alleges each defendant played in the conspiracy charged, (c) the specific individual/(s) the government alleges committed the illegal activity, and (d) the date, time, and place where the alleged illegal activity occurred;"

(2) "the acts or conduct of defendant Castelluzzo that constitute his involvement in the crime alleged";

(3) "the acts or conduct of defendant Castelluzzo that constitute his involvement in the crime alleged";[3]

(4) "all individuals that the government will allege are unindicted co-conspirators and/or among the 'others' referenced in the superseding indictment";

(5) "the acts or conduct of all such other individuals that constitute their involvement in the crime alleged";

(6) "the places other than in the District of New Jersey in which the crime is alleged to have occurred and/or the places included within the "elsewhere" referenced in the superseding indictment." *See* Defs.' Br. at 31–32.

However, the Government claims that it has produced "voluminous discovery" to Defendants and this discovery,[4] combined with the sufficiency of the allegations contained in the Superseding Indictment, negates the need for a bill of particulars. The Court agrees. *See, e.g.*, *United States v. Wolff*, Crim. No. 11-719 FSH, 2013 WL 646204, at *2 (D.N.J. Feb. 20, 2013).

---

[3] It is likely that Defendants' counsel meant for the third provision to identify the acts or conduct of defendant Atwell, as the second provision refers to the acts or conduct of defendant Castelluzzo.

[4] Specifically, the Government asserts that it has produced discovery "related to both the DEA and the HSI investigations" as well as "the documents subsequently received from the search warrants." Govt.'s Br. at 27.

Further, the information Defendants seek goes beyond the minimum particulars necessary for Defendants to prepare for trial and instead veers towards the particulars of the Government's trial strategy. *See id.* Accordingly I find that it is within the Court's discretion to deny Defendants' bill of particulars.

## III.    Severance

Next, Defendants argue that their trials should be severed. First, Defendants claim that they are improperly joinder under Rule 8 of the Federal Rules of Criminal Procedure. Rule 8(b) provides that two or more defendants may be joined in an indictment if "they are alleged to have participated in the same act or transactions, constituting an offense or offenses.  The defendants may be charged in one or more counts together or separately.   All defendants need not be charged in each count." FED. R. CRIM. P. 8(b). Here, both Defendants are charged together in the sole conspiracy count of the Superseding Indictment. "Joinder of a conspiracy count and substantive counts arising out of the conspiracy is permitted, since the claim of conspiracy provides a common link, and demonstrates the existence of a common scheme or plan." *United States v. Eufrasio*, 935 F.2d 553, 567 (3d Cir. 1991) (quoting *United States v. Somers*, 496 F.2d 723, 729–730 (3d Cir.), *cert. denied*, 419 U.S. 832 (1974) (emphasis in *Somers*); *see also United States v. Dentico*, No. 05-607 (WJM), 2006 WL 757217, at *2 (D.N.J. Mar. 20, 2006). Therefore, the Court finds that the joinder of Defendants in this case is proper pursuant to FED. R. CRIM. P. 8 and Defendants' motion to sever on this basis should be denied.

Defendants further claim that severance pursuant to Rule 14 is necessary.  FED. R. CRIM. P. 14(a) provides: "If the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." FED R. CRIM. P. 14(a).

Severance under Fed. R. Crim P. 14 is appropriate "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993); *United States v. Balter*, 91 F.3d 427, 432 (3d Cir. 1996) (quoting *Zafiro*, 506 U.S. at 539).

In *Zafiro*, the Court stated "[s]uch a risk might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant." *Id.* The Court made clear that "[t]he risk of prejudice will vary with the facts in each case, and district courts may find prejudice in situations not discussed here." *Id.* Further, "[w]hen the risk of prejudice is high, a district court is more likely to determine that separate trials are necessary," although "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Id.* (citation omitted). "Rule 14 leaves the determination of risk of prejudice and any remedy that may be necessary to the sound discretion of the district courts." *Id.* at 541.

As a general matter, the Third Circuit has repeatedly advised that all defendants in multi-defendant conspiracies cases should be tried together. The Circuit reasoned that district courts have legitimate concerns for judicial economy, and "it is preferable to have all of the parties tried together so that the full extent of the conspiracy may be developed." *United States v. Provenzano*, 688 F.2d 194, 1999 (3d Cir.), *cert. denied*, 459 U.S. 1071 (1982); *see also United States v. Reicherter*, 647 F.2d 397, 399-400 (3rd Cir. 1981); *United States v. Rosa*, 560 F.2d 149, 153-56 (3rd Cir.), *cert. denied*, 434 U.S. 862 (1977); *United States v. Somers*, 496 F.2d 723, 730-31 (3rd Cir.), *cert. denied*, 419 U.S. 832 (1974). In that regard, in this circuit, there is a presumption in a favor of a single trial for all defendants charged in a conspiracy. *Virgin Islands*

*v. Sanes*, 57 F.3d 338, 341-42 (3d Cir. 1995); *United States v. Heitzenrater*, 2010 U.S. Dist. LEXIS 7874, at *18 (W.D. Pa. Feb. 1, 2010).

Indeed, as a matter of sound policy, there exists a preference in the federal system for joint trials of defendants who are indicted together. *See Zafiro*, 506 U.S. 534; *accord United States v. Urban*, 404 F.3d 754, 775 (3d Cir. 2005). Joint trials "play a vital role in the criminal justice system." *Id.* In fact, the United States Supreme Court has repeatedly approved joint trials because such trials promote efficiency and "serve justice by avoiding the scandal and inequity of inconsistent verdicts." *Id.* "Generally speaking, where several defendants are jointly indicted they should be tried together," particularly where the charges against them arise out of the same series of acts or transactions. *Id.* In addition, joint trials of defendants charged under a single conspiracy aid the finder of fact in determining the "full extent of the conspiracy," *Provenzano*, 688 F.2d at 199, and prevent "the tactical disadvantage to the government from disclosure of its case*." United States v. Jackson*, 649 F.2d 967, 973 (3d Cir.), *cert. denied*, 454 U.S. 1034 (1981); *see also United States v. Thornton*, 1 F.3d 149, 152 (3d Cir. 1993) (holding that where all defendants were charged in participating in a single overarching drug conspiracy, joinder was appropriate.).  As a result, when defendants have been properly joined under Rule 8(b), "a district court should grant a severance under [Federal Rule of Criminal Procedure] 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539; Fed. R. Crim. P. 14.

Further, a defendant has "a heavy burden in gaining severance." *United States v. Quintero*, 38 F.3d 1317, 1343 (3d Cir. 1994). Defendants are not entitled to a severance merely because they may have a better chance of acquittal in separate trials or because the evidence is

different as to each defendant. Because differing levels of evidence are inherent in joint trials, "[p]rejudice should not be found in a joint trial just because all evidence adduced is not germane to all counts against each defendant or some evidence adduced is more damaging to one defendant than others." *United States v. Console*, 13 F.3d 641, 655 (3d Cir. 1993). Rather, the preferred remedy in such a situation is to instruct jurors regarding which evidence is admissible against which defendant. *See Zafiro*, 506 U.S. at 540-41; *United States v. Voigt*, 89 F.3d 1050, 1096 (3d Cir. 1996). Further, severance is not appropriate when the same or substantially the same evidence will be presented in both trials. *See Console*, 13 F.3d at 655. Absent any exacerbating circumstances, *see United States v. Adams*, 759 F.2d 1099, 1112 (3d Cir. 1985) (the court need not sever any defendant's trial unless the evidence is so complex or confusing that the jury would be unable to make individual determinations about guilt for each of the defendants), the Court will not find severance in such a scenario to be appropriate.

Here, Defendants' arguments for severance are not persuasive. Defendants first argue that there will be a substantial risk of confusion and "spillover prejudice" that might induce the jury to improperly convict either or both defendants. However, Defendants do not offer any factual support for their contention regarding how being tried together would result in "spillover prejudice." Rather, Defendants merely cursorily state that (1) the "[t]here is no transactional nexus or common plan" contained in the conspiracy count under which both Defendants are charged,[5] (2) generally, there are "disparities in proofs alleged against and activities purportedly

---

[5] This point appears to go towards Defendants' severance argument under Rule 8(b), because "there must exist a transactional nexus in that the defendants must have participated in 'the same act or transaction, or in the same series of acts or transactions." *United States v. Jimenez*, 513 F.3d 62, 83 (3d Cir. 2008) (quoting FED. R. CRIM. P. 8(b)). However, the Court has already found that joinder is proper under Rule 8(b).

engaged in by each of the defendants"[6] and (3) the jury would likely be unable to follow the numerous limiting instructions that would be issued on behalf of each defendant. *See, e.g.*, *United States v. Avila*, 610 F. Supp. 2d 391, 398 (M.D. Pa. 2009) (denying a motion for severance when the defendant "has identified no evidence applicable to the underlying drug offenses that would result in actual, substantial prejudice to his rights at trial" because such a motion "provides a quintessential example of the conclusory allegations of prejudice that are insufficient to obtain severance").

Second, Defendants argue that because the Superseding Indictment is "bereft of any allegation that the purported activities of each defendant were related . . . judicial economy will not be fostered by joinder and severance is not only warranted but also compelled . . . ." Defs.' Br. at 43–44. However, Defendants cite no case law in support of this proposition, and this argument flies in the face of the Superseding Indictment, which specifically charged both defendants together in purportedly participating in a conspiracy to possess with the intent to distribute specified controlled substances. Further, the Government has provided information about the Defendants, in discovery and to the Court, which fleshes out the joint activities in

---

[6] Defendants cryptically also refer to a post-arrest statement made by defendant Atwell against defendant Castelluzzo in support of a sub-argument that evidence against Castelluzzo that would be inadmissible if Castelluzzo's trial was severed might be admitted if a joint trial proceeded. *See* Defs.' Br. at 44.

The Government elaborates on this point in its response, noting that in a post-arrest interview, "Atwell tried to distance himself from Castelluzzo during his post-arrest interview on April 16, 2013, claiming that he had only known [Castelluzzo] for a few months." Govt.'s Br. at 30. The Government notes, however, that "if the Government introduces any of what was largely a self-serving statement by Atwell, it can be sanitized so as to excise the references to Castelluzzo's payment of the gas and tolls as well as the reference to the inception of their relationship. Thus, there is no *Bruton* issue and severance is unnecessary if the defendant is not directly implicated by a co-defendant's out-of-court statement." *See Bruton v United States*, 391 U.S. 123, 137 (1968) (prohibiting the introduction of a confession made by one defendant at a trial of a second defendant if the statement by the first defendant implicates the second defendant in a charged criminal activity).

which Defendants purportedly engaged. *See* Govt.'s Br. at 30–31.

Accordingly, the Court denies Defendants' motion to sever.

## V.    Government's Motion *in Limine*

Finally, the Government seeks to introduce evidence that emails were exchanged between the Google accounts registered to Defendants dating back to September 2010, two months prior to the time period noted in the charged conspiracy. The Government claims that these communications are "intrinsic to the crimes charged. Alternatively, these emails are clearly admissible as evidence of a common scheme or plan." Govt.'s Br. at 53–54. Further, the Government argues that under Rule 403 of the Federal Rules of Evidence, the probative value of these communications outweighs any danger of unfair prejudice. The Government states that the emails it seeks to introduce are included in, but not limited to, Exhibit P of their opposition brief.

Defendants did not oppose the Government's *motion in limine* in their reply, and at the motion hearing, Defendant Atwell merely reserved his right to object once he was provided with copies of all of the emails the Government seeks to introduce.

The Third Circuit defines "intrinsic" evidence as encompassing two "narrow" evidentiary categories. "First, evidence is intrinsic if it "directly proves" the charged offense . . . . Second, 'uncharged acts performed contemporaneously with the charged crime may be termed intrinsic if they facilitate the commission of the charged crime.'" *U.S. v. Green*, 617 F.3d 233, 249–50 (3d Cir. 2010) (quoting *United States v. Bowie*, 232 F.3d 923, 929 (D.C. Cir. 2000)). Unlike extrinsic evidence, intrinsic evidence is generally admitted, unless its probative value is substantially outweighed by unfair prejudice, under the dictates of Rule 403 of the Federal Rules of Evidence. FED. R. EVID. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice,

confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."); *see also, e.g.*, *United States v. Northington*, No. CRIM.A. 07-550-05, 2013 WL 420296, at *7 (E.D. Pa. Feb. 4, 2013) (distinguishing between the admissibility analysis of intrinsic and extrinsic evidence).

Upon review of Exhibit P, I find that the emails in question are relevant and intrinsic evidence, as they go toward directly proving Atwell and Castelluzzo's partnership in a drug conspiracy. *See, e.g.*, *United States v. Cox*, No. CRIM.A. 11-99 JLL, 2011 WL 4906672, at *3 (D.N.J. Oct. 14, 2011). Further, I find that under Rule 403, the probative value of the emails in question is not substantially outweighed by any potential prejudicial effect, particularly because Defendants have not articulated any potential prejudicial effect.[7] Therefore, the Government's motion *in limine* is granted, though I preserve Defendants' right to object upon being provided all of the emails to be introduced.

## VI.     Conclusion

For the above reasons, Defendants' motions (1) to dismiss the superseding indictment, (2) for a bill of particulars, and (3) to sever are denied. The Government's motion *in limine* is granted. An appropriate order shall follow.

Dated: May 4, 2015                                          /s/ Freda L. Wolfson
                                                  The Honorable Freda L. Wolfson
                                                  United States District Judge

---

[7] Defendants also do not raise any potential authentication issues with the emails in question. *See* FED. R. EVID. 901(b).